IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL L. E. KING, et al.,      )
                                 )      No. 04-1029-HU
                Plaintiff,       )
                                 )
        v.                       )
                                 )   FINDINGS AND RECOMMENDATION
                                 )
DEUTSCHE BANK AG, et al.,        )
                                 )
                Defendants.      )
_____)

John S. Stone
Preston Bunnell & Stone
1100 S.W. Sixth Avenue, Suite 1405
Portland, Oregon 97204

David R. Deary
W. Ralph Canada
Stewart Clancy
Jeven R. Sloan
Deary Montgomery Defeo & Canada
2515 McKinney Avenue, Suite 1565
Dallas, Texas 95201
        Attorneys for plaintiffs

Keith Dubanevich
Garvey Schubert Barer
121 S.W. Morrison Street, 11th floor
Portland, Oregon 97204

Seth C. Farber
Dewey Ballantine
1301 Avenue of the Americas

FINDINGS AND RECOMMENDATION Page 1

New York, New York 10010
    Attorneys for defendants Deutsche Bank AG; Deutsche Bank
    Securities, Inc., d/b/a Deutsche Bank Alex Brown, a division
    of Deutsche Bank Securities, Inc.; Craig Brubaker; David
    Parse

Kerry J. Shepherd
Markowitz, Herbold, Glade & Mehlhaf
1211 S.W. Fifth Avenue, Suite 3000
Portland, Oregon 97204
    Attorneys for defendants BDO Seidman LLP, Michael Kerekes,
    and Robert Greisman

Peter C. Richter
Sarah Lowinger
Miller Nash
111 S.W. Fifth Avenue, Suite 3400
Portland, Oregon 97204
    Attorneys for defendants
    Lincoln National Corporation, d/b/a Lincoln Financial Group;
    Lincoln Financial Advisors Corporation; Michael Nelson;
    James Siegfried

HUBEL, Magistrate Judge:

    This is an action by three groups of plaintiffs (the "King plaintiffs," the "Mulholland plaintiffs," and the "Allen plaintiffs") against four groups of defendants, investment advisors and accountants (the "Deutsche Bank defendants," the "Lincoln defendants," the "BDO defendants," and the "Brown defendants"). Plaintiffs assert claims under the Racketeering Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1965, breach of fiduciary duty, fraud, breach of contract or breach of the duty of good faith and fair dealing, negligent misrepresentation, professional malpractice, declaratory judgment, unjust enrichment, and civil conspiracy.

    The court has previously ruled on the Deutsche defendants' motion to arbitrate or stay claims (doc. # 37), the BDO defendants'

FINDINGS AND RECOMMENDATION Page 2

motion to arbitrate or stay claims (doc. # 43), the Lincoln defendants' motion to dismiss (doc. # 53), and the BDO defendants' motion to strike and to seal certain portions of plaintiffs' briefs and supporting evidence (doc. # 63). The matter now before the court is the Deutsche defendants' motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all or parts of the claims asserted against them in plaintiffs' Amended Complaint (doc. # 124).

The facts alleged and the claims asserted in the Amended Complaint are discussed in the Findings and Recommendation filed on March 9, 2005 (doc. # 107) and adopted by Judge Mosman on May 9, 2005. The Deutsche defendants move to dismiss the claims asserted against them on the grounds that 1) the RICO claims are barred by the Private Securities Litigation Reform Act (PSLRA) 2) the RICO claim asserted under § 1962(c)(Claim One) fails to allege adequately the standing and pattern requirements; 2) the RICO conspiracy claim asserted under § 1962(d) (Claim Two) fails to allege a substantive RICO claim under § 1962(c); 3) the RICO aiding and abetting claim (Claim Three) cannot stand as a matter of law; 4) plaintiffs have failed to state cognizable state law claims; 5) plaintiffs have failed to plead their fraud-based claims with the degree of particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; and 6) to the extent that any of plaintiffs' claims against the Deutsche defendants survive the motion, certain of plaintiffs' damages claims fail as a matter of law.

///

**Standard**

A motion under Rule 12(b)(6) should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Edwards v. Marin Park, Inc.</u>, 356 F.3d 1058, 1061 (9th Cir. 2004). When ruling on a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff. <u>Broam v. Bogan</u>, 320 F.3d 1023, 1028 (9th Cir. 2003). The court accepts as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them. <u>Id.</u>

**Discussion**

**A.    RICO Claims**

Claim One is for violation of 18 U.S.C. § 1962(c), which provides that it

> shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

Claim Two is for violation of 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). Section 1962(d) provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a) or (c) of this section."

Claim Three is a claim for violation of 18 U.S.C. § 2 by "seeking to and aiding and abetting a scheme to violate 18 U.S.C. § 1962(c).

FINDINGS AND RECOMMENDATION Page 4

### 1. Preemption by the PSLRA

In 1995, RICO was amended by the PSLRA, to provide, "Any person injured in his business or property by reason of a violation of [RICO] may sue * * * except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." 18 U.S.C. § 1964(c).

The Deutsche defendants argue that the PSLRA precludes the plaintiffs' RICO claims because 1) it was integral to the COBRA tax shelter scheme to generate the desired tax losses through the purchase and sale of securities; 2) plaintiffs have alleged that they were deceived into believing the FX contracts involved the purchase of securities in the form of exchange-traded foreign currency option contracts; and 3) the COBRA tax shelter scheme involved the issuance of securities in the form of S Corporation shares. The court has previously ruled that the RICO claims of the Allen plaintiffs against the Lincoln defendants are precluded by the PSLRA.

The King plaintiffs allege that as part of the COBRA strategy, M & M King Investment Partners purchased shares of Cisco Systems, Inc. and Canadian Dollars and subsequently contributed these assets to Michael L.E. King and Associates, Inc., an Oregon corporation in which Michael King was the 100% shareholder, as a contribution to capital. Amended Complaint, ¶¶ 94, 96. M & M King Investment Partners was subsequently liquidated, and Michael L.E. King and Associates sold all of the Cisco shares and the Canadian Dollars it

had received from M & M King Investment Partners. Id. at ¶ 97.

The Mulholland plaintiffs allege that the transaction into which they entered was "identical in form to the one entered into by the King Plaintiffs and differed only in the size of the various "trades" and the type of currency involved." Amended Complaint, ¶ 100.

Plaintiffs argue, as they have previously, that the purchase and sale of stock were not necessary to implementation of the COBRA strategy. As discussed in the March 9, 2005 Findings and Recommendation, even if the COBRA strategy could have been accomplished with the use of assets other than stock,[1] in this particular case, the purchase and sale of stock was an intrinsic part of the COBRA strategy. I conclude that the PSLRA bar applies to the RICO claims of the King and Mulholland plaintiffs, and

---

[1] The Deutsche defendants' argument that the COBRA scheme involved securities because plaintiffs have alleged that they were deceived into believing the FX contracts were traded on a national securities exchange is unpersuasive. Plaintiffs alleged that the FX Contracts were "not something traded on any recognized exchange but were simply a matter of private contract between the participants. ... Plaintiffs were unaware of these aspects of the FX Contracts." Amended Complaint, ¶¶ 38, 92. I disagree with the defendants that this amounts to an affirmative statement that plaintiffs intended to purchase securities that did not in fact exist.

recommend that the motion to dismiss the RICO claims on this ground be granted.

## 2. RICO Standing

The Deutsche defendants assert that the plaintiffs' RICO claims fail because plaintiffs cannot establish RICO standing. Standing to assert a RICO claim requires an allegation that defendants' conduct proximately caused plaintiffs' injuries and that they suffered a concrete financial loss as a result. See Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992)(18 U.S.C. § 1964(c)'s provision that "[a]ny person injured ... by reason of a violation of [§ 1962] may sue therefor" means that in order to prevail on a civil RICO claim, plaintiff must show that the defendant's violation was the "proximate cause" of the plaintiff's injury); see also Chaset v. Fleer/Skybox Int'l, LP, 300 F.3d 1083, 1086 (9th Cir. 2002).

The Deutsche defendants argue that because the predicate offense alleged by the plaintiffs is mail fraud, the proximate cause element requires a showing of reasonable reliance, citing Bank of China v. NBM LLC, 359 F.3d 171, 176 (2d Cir. 2004), and that the Mulholland and Allen plaintiffs cannot show such reliance because the FX Contracts they executed included a letter agreement confirming the terms of the investments entered into with Deutsche Bank (the Confirmation), which expressly disclaims such reliance.

The Confirmation states:

Each party represents to the other party as of the date that it enters into this Transaction that ...
It is acting for its own account, and it has made its own independent decisions to enter into this Transaction and

FINDINGS AND RECOMMENDATION Page 7

as to whether the Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party ... as investment advice or as a recommendation to enter into this Transaction, it being understood that information and explanations related to the terms and conditions of this Transaction shall not be considered to be investment advice or a recommendation to enter into the Transaction. No communication (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of this Transaction.

Dubanevich Declaration, Exhibit 4, ¶ 3(iii); Dubanevich Reply Declaration, Exhibit 1, ¶ 3(iii). Defendants argue that given this representation, the Mulholland plaintiffs cannot, as a matter of law, have reasonably relied upon any representations or omissions by the Deutsche defendants and, thus, cannot demonstrate the causation necessary for RICO standing.

Plaintiffs counter that when mail or wire fraud is the predicate act for a RICO violation, the mailing or use of the wires need only be incident to the underlying scheme, not essential to it, and that the mailing or use of the wires need not contain any misrepresentations, citing <u>United States v. Shipsey</u>, 363 F.3d 962, 971 (9th Cir. 2004).

In <u>Bank of China</u>, the court stated the established rule in the Second Circuit that where mail fraud was the predicate act for a civil RICO claim, the proximate cause element articulated in <u>Holmes</u> required the plaintiff to show "reasonable reliance." 359 F.3d at 176. The court noted that the same rule applied in other jurisdictions, including the Fifth, Eighth, and Fourth Circuits. <u>Id.</u>

FINDINGS AND RECOMMENDATION Page 8

The Deutsche defendants have not cited a Court of Appeals case from the Ninth Circuit which so holds. They do cite a district court ruling from Washington, <u>Swartz v. KPMG</u>, 2004 U.S. Dist. LEXIS 22757 (W.D. Wash. 2004), a case involving a similar tax avoidance strategy, in which the court held that an essential element of a predicate wire fraud claim is proof of reasonable reliance on allegedly fraudulent statements. The <u>Swartz</u> court relied on cases from the Second, Fifth and Eleventh Circuits and on <u>Martin v. Dahlberg, Inc.</u>, 156 F.R.D. 207, 215 (N.D. Cal. 1994).

This court has previously ruled that the Allen plaintiffs' RICO claims are precluded by the PSLRA. The RICO claims of the King and Mulholland plaintiffs are based on the same allegations. I find it unnecessary, therefore, to consider whether plaintiffs' RICO claims should also be dismissed for failure to allege RICO standing, in the absence of authority from the Court of Appeals. I recommend that the motion to dismiss on this ground be denied as moot. If, upon review, the court rejects my recommendation that the RICO claims of the King and Mulholland plaintiffs be dismissed as precluded by the PSLRA, I recommend that the question of whether the plaintiffs have alleged RICO standing be considered by the reviewing court or remanded to me for consideration.

### 3. Pattern of Racketeering Activity

The Deutsche defendants contend that the Amended Complaint fails to allege a pattern of racketeering activity under 18 U.S.C. § 1962, because the plaintiffs have failed to allege that the "racketeering predicates are related, and that they amount to or

pose a threat of continued criminal activity." <u>H.J. Inc. v.</u>
<u>Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 239 (1989). In <u>H.J.</u>, the
Supreme Court held that continuity can be demonstrated by proving
either "a series of related predicates extending over a substantial
period of time" or "past conduct that by its nature projects into
the future with a threat of repetition." <u>Id.</u> at 241-42; see also
<u>Religious Technology Center v. Wollersheim</u>, 971 F.2d 364, 366 (9th
Cir. 1992).

The Deutsche defendants contend that the plaintiffs have
failed to establish the continuity requirement because they have
pleaded neither open-ended continuity, by pleading predicate acts
that "specifically threaten repetition or that become a regular way
of doing business," <u>Howard v. AOL, Inc.</u>, 208 F.3d 741, 750 (9th Cir.
2000)nor closed-ended continuity, by alleging a series of related
predicates extending over a substantial period of time.

They allege that the Amended Complaint fails to allege open-
ended continuity because none of the alleged predicate acts
threatens to recur. See <u>H.J., Inc.</u>, 492 U.S. at 241-42 and <u>Howard</u>,
208 F.3d at 750. Defendants point to allegations in the Amended
Complaint that the IRS invalidated the COBRA strategy retroactively
to before the date of Plaintiffs' transactions, so that there was
no realistic possibility that the alleged conduct would recur. See,
e.g., Amended Complaint ¶¶ 104 (IRS issues IRS Notice 1999-59 on
December 27, 1999), 106 (IRS issues Notice 2000-44 in August 2000);
136 (in June 2003, IRS formalizes its position regarding the COBRA
strategy and other 2000-44 transactions by issuing new regulations

FINDINGS AND RECOMMENDATION Page 10

retroactive to October 18, 1999).

Plaintiffs have not addressed the Deutsche defendants' arguments with respect to open-ended continuity. I agree with the Deutsche defendants' contention that plaintiffs have failed to allege open-ended continuity because they have alleged that the IRS had already invalidated the COBRA strategy before the date of Plaintiffs' transactions, so that there was no realistic possibility that the alleged conduct would recur.

The Deutsche defendants contend that according to the Amended Complaint, Deutsche Bank's alleged activities occurred between the summer of 1999 and December 2000, and apparently lasted no more than one year for each group of plaintiffs. See, e.g., Amended Complaint, ¶¶ 101 (in approximately October 1999, the Allen plaintiffs agreed to engage in the COBRA strategy); 170F (facsimile dated October 20, 1999, from Mr. Allen to Deutsche defendant Parse, attaching letters authorizing the wire transfer of funds); 64-65 (in the summer of 2000, or "shortly thereafter," King met with Brubaker of Deutsche); 85-86 ("In approximately August September 2000, the King Plaintiffs agreed to engage in the COBRA strategy"; in October 2000, King plaintiffs formed the entities for the purpose of carrying out the COBRA strategy; 170B (letter dated October 11, 2000 sent from Deutsche to Michael King enclosing new account forms); 89 (on or about November 10, 2000, King plaintiffs entered into FX contract with Deutsche Bank); 93-97 (between November 13, 2000 and December 26, 2000, King plaintiffs went through remaining steps of COBRA strategy); 69 (at unspecified

time, Mulholland plaintiffs were referred to Deutsche defendant Judd, who sold the strategy to them over the phone); 98 (in approximately November 2000, the Mulholland plaintiffs agreed to engage in the COBRA strategy); 170D (email dated April 10, 2001 from Deutsche employee on behalf of Judd, to Mulholland regarding fees relating to the COBRA strategy).

The Deutsche defendants assert that these allegations fail to establish a period long enough to constitute closed-ended continuity, citing Religious Technology Center, 971 F.2d at 966-67 (predicate acts extending over six months at most did not satisfy continuity requirement, citing Supreme Court's holding in H.J., Inc. that predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement; court noting that it had found "no case in which a court has held the requirement to be satisfied by a pattern of activity lasting less than a year."); Symantec Corp. v. DC Micro, Inc., 2002 WL 31112178 at *2 (D. Or. 2002)(same).

Plaintiffs argue that they have alleged closed-ended continuity because the Amended Complaint alleges a time period from January 1999 to December 2003. See Amended Complaint, ¶ 165 ("The predicate acts of mail and wire fraud began at least as early as January 1999 and continued until at least December 2003.") However, the court is not required to accept as true legal conclusions that are cast in the form of factual allegations, Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) and conclusory allegations of law and unwarranted inferences

1  are insufficient to defeat a motion to dismiss. <u>Associated Gen.</u>
2  <u>Contractors v. Metropolitan Water Dist. of S. California</u>, 159 F.3d
3  1178, 1181 (9th Cir. 1998).

4     The acts specifically alleged against the Deutsche defendants
5  comprise the period between October 1999 and November 2000, a
6  period of, at most, 14 months. This is sufficient to allege closed-
7  ended continuity, under <u>Allwaste, Inc. v. Hecht</u>, 65 F.3d 1523 (9th
8  Cir. 1995). In <u>Allwaste</u>, the court acknowledged that it had decided
9  no case in which the continuity requirement was satisfied by a
10 pattern of activity lasting less than a year, but cautioned against
11 a "hard and fast, bright line, one-year rule." 65 F.3d at 1528. The
12 court noted that although Allwaste's original complaint failed to
13 specify the dates of the first and last alleged predicate acts, it
14 had maintained at oral argument that it could show acts occurring
15 over a period of as much as 13 months. <u>Id.</u> The court held that such
16 a showing would demonstrate that the criminal activity spanned a
17 "substantial period of time," and would therefore satisfy the
18 continuity requirement. I conclude, therefore, that under <u>Allwaste</u>,
19 plaintiffs have sufficiently alleged closed-ended continuity.

20     Because of my recommendation that the court apply to the King
21 and Mulholland plaintiffs its previous ruling that the Allen
22 plaintiffs' RICO claims are foreclosed by the PSLRA, it may be
23 unnecessary for the reviewing court to consider whether plaintiffs
24 have pleaded the continuity requirement, so that the motion to
25 dismiss on this ground should be denied as moot. If, upon review,
26 the court rejects my recommendation that the RICO claims of the

27

28 FINDINGS AND RECOMMENDATION Page 13

King and Mulholland plaintiffs be dismissed on the grounds of PSLRA, I recommend that the motion to dismiss on the basis of a failure to plead the continuity requirement be denied.

### 4. RICO Conspiracy Claim

The Deutsche defendants assert that Claim Two must be dismissed because plaintiffs' failure to allege the requisite substantive elements of a RICO claim under § 1962 (c) necessarily requires dismissal of a claim under § 1962(d). They rely on <u>Turner v. Cook</u>, 362 F.3d 1219, 1231 n. 17 (9th Cir. 2004):

> Because appellants failed to allege the requisite substantive elements of a RICO claim under 18 U.S.C. § 1962(c), appellants' claim under 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section," also fails.

They also rely on <u>Religious Technology Center</u>, 971 F.2d at 367 n. 8 (where plaintiff has failed to allege requisite substantive elements of RICO, conspiracy cause of action cannot stand).

The plaintiffs argue that a RICO conspiracy defendant need not himself commit or agree to commit predicate acts, citing <u>Salinas v. United States</u>, 522 U.S. 52, 65 (1997). In <u>Salinas</u>, 522 U.S. at 65, the Supreme Court held that a violation of § 1962(c) was not a prerequisite to a violation of § 1962(d).

However, the Deutsche defendants point out that in <u>Beck v. Prupis</u>, 529 U.S. 494, 506 n. 10 (2000), the Supreme Court declined to resolve whether its holding in <u>Salinas</u>, a criminal RICO case, extended to a civil RICO case:

> Respondents argue that a § 1962(d) claim must be predicated on an *actionable* violation of §§ 1962(a)-(c). However, the merit of this view is a different (albeit

FINDINGS AND RECOMMENDATION Page 14

related) issue from the one on which we granted certiorari, namely, whether a plaintiff can bring a § 1962 claim for injury flowing from an overt act that is not an act of racketeering. Therefore, contrary to Justice STEVENS' suggestion, see *post*, at 1619-20, we do not resolve whether a plaintiff suing under § 1964(c) for a RICO conspiracy must allege an actionable violation under §§ 1962 (a)-(c), or whether it is sufficient for the plaintiff to allege an agreement to complete a substantive violation and the commission of at least one act of racketeering that caused him injury.

The Deutsche defendants argue that the issue has been resolved in the Ninth Circuit by <u>Turner</u> and <u>Religious Technology Center</u>. I agree that the court is bound by this authority. Accordingly, I recommend that Claim Two be dismissed with leave to replead, if my recommendation that Claim Two be dismissed as barred under PSLRA is not adopted, and if plaintiffs are given leave to replead Claim One.

### 5. Aiding and Abetting

The Deutsche defendants assert that Claim Three must be dismissed because there is no private cause of action for aiding and abetting a RICO violation. In the March 9, 2005 Findings and Recommendation adopted by Judge Mosman, the court so held, on the basis of <u>Central Bank of Denver v. First Interstate Bank of Denver</u>, 511 U.S. 164,182 (1994), in which the Supreme Court held that liability for aiding and abetting would not be read into a statute. Although <u>Central Bank</u> was a § 10(b) securities fraud case, the court applied its holding to RICO claims.

If my recommendation that Claim Three be dismissed as foreclosed by the PSLRA is not adopted, I recommend that Claim Three be dismissed with prejudice on this ground.

FINDINGS AND RECOMMENDATION Page 15

## B. Common Law Claims

### 1. Unjust Enrichment

The Deutsche defendants assert that the Amended Complaint fails to state a claim for the equitable remedy of unjust enrichment because a valid contract existed between the plaintiffs and Deutsche Bank. Unjust enrichment is an equitable rather than a legal claim; consequently, no action for unjust enrichment lies where a contract governs the parties' relationship. <u>McKesson HBOC v. New York State Common Retirement Fund, Inc.</u>, 339 F.3d 1087, 1091 (9th Cir. 2003).

Plaintiffs respond by asking the court to declare that the FX Contracts were invalid for lack of consideration, because Deutsche Bank had unlimited discretion to determine whether the FX Contracts would pay out, and therefore had the sole ability to determine whether it was required to perform under the contract.

In reply, the Deutsche defendants contend that under New York law,[2] even "unbridled discretion" is not fatal to enforcement of an

---

[2] The Deutsche defendants assert that New York law applies to this claim because the Account Agreements contain New York choice of law clauses. The plaintiffs do not concede that New York law governs, arguing that contractual choice of law provisions do not govern tort claims. See, e.g., <u>Sutter Home Winery, Inc. v. Vintage Selections, Ltd.</u>, 971 F.2d 401, 407-08 (9th Cir. 1992). However, the parties' contractual agreement to application of New York law would govern the question of whether

FINDINGS AND RECOMMENDATION Page 16

agreement. <u>Lee v. Joseph E. Seagram & Sons, Inc.</u>, 552 F.2d 447, 454 (2d Cir. 1977). Rather than invalidate the contract, the court analyzes such discretion under the duty of good faith. <u>Id.</u>; see also <u>Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.</u>, 807 F. Supp. 337, 346 (S.D.N.Y. 1992). The Deutsche defendants argue that, in addition, the amounts received by the Deutsche defendants, the premiums, were provided for in the FX Contracts, and therefore cannot be recovered on an unjust enrichment theory.

The Deutsche defendants contend that if the discretion provided for in the contract is analyzed under a contractual good faith theory, the claim must fail because plaintiffs can point to no contractual right of which plaintiffs were deprived as a result of the Deutsche defendants' conduct. <u>Agency Dev., Inc. v. Medamerica Ins. Co. of New York</u>, 327 F. Supp.2d 199, 203 (W.D.N.Y. 2004)(covenant of good faith and fair dealing prohibits a party from engaging in conduct that "will have the effect of destroying or injuring the rights of the other party to receive the benefit of the contract."); <u>Jaffe v. Paramount Communications, Inc.</u>, 644 N.Y.S.2d 43, 47-48 (N.Y. App. Div. 1996)(failure to allege facts demonstrating that defendants deprived plaintiff of any rights he possessed under agreement was fatal to claim for breach of covenant of good faith and fair dealing); <u>Sutton Associates v. Lexis-Nexis</u>, 761 N.Y.S.2d 800, 804 (N.Y. Sup. Ct. 2003)(complaint failed to identify any specific contractual provision actually breached).

And finally, the Deutsche defendants assert that plaintiffs

the agreement was a valid contract.

FINDINGS AND RECOMMENDATION Page 17

cannot ground a claim for breach of the implied covenant of good faith and fair dealing on allegations that Deutsche Bank had discretion with respect to the spot rates, because that discretion was explicitly disclosed in the contract itself and plaintiffs have not alleged that Deutsche Bank acted arbitrarily or irrationally in exercising that discretion. See State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 169 (2d Cir. 2004)(where contract contemplates exercise of discretion, covenant of good faith and fair dealing includes promise not to act arbitrarily or irrationally in exercising that discretion).

Plaintiffs counter that they have alleged, in ¶ 44 of the Amended Complaint, that the Deutsche defendants breached the covenant of good faith and fair dealing in their contracts with the plaintiffs by 1) failing to disclose the true likelihood that the FX contracts would pay out; 2) failing to disclose that the Deutsche defendants retained unlimited discretion to determine whether the FX contracts would pay out; 3) failing to apprise plaintiffs that the FX contracts had no reasonable possibility of a profit, or at least not in excess of the fees paid; and 4) failing to disclose that the COBRA strategy had been devised by Jenkens and, in some instances, affirmatively stating that COBRA was Deutsche Bank's own proprietary strategy.

In reply, the Deutsche defendants argue that ¶ 44 of the Amended Complaint contains no factual allegations supporting the conclusion that the transactions would almost certainly be unprofitable for plaintiffs. Moreover, they argue, even assuming

for purposes of the present motion that there had been failures to disclose of the type plaintiffs assert, plaintiffs point to no contractual obligations in the FX contracts that such purported failures to disclose allegedly breached.

I agree that plaintiffs have failed to state a claim for unjust enrichment because their relationship with the Deutsche defendants was contractual. I further conclude that, because the agreements between the plaintiffs and Deutsche Bank explicitly granted Deutsche Bank unfettered discretion in selecting the spot rates, the agreements between them cannot be invalidated on the basis of that discretion. Absent any allegation that Deutsche Bank exercised its discretion in an arbitrary or irrational manner, plaintiffs have not stated a claim for breach of the implied covenant of good faith and fair dealing. I recommend that plaintiffs' claim for unjust enrichment be dismissed with leave to replead.

## 2. Breach of Fiduciary Duty

Plaintiffs and the Deutsche defendants have cited both New York and Oregon law in support of their arguments on the various tort claims. However, as discussed above, contractual choice of law provisions do not ordinarily control claims arising in tort; rather, the tort claims are decided according to the law of the forum state. <u>Sutter Home</u>, 971 F.2d at 407; see also <u>Consolidated Data Terminals v. Applied Digital Data Systems</u>, 708 F.2d 385, 390 n. 3 (9th Cir. 1983). Accordingly, the court will apply Oregon law to the remaining common-law tort claims.

FINDINGS AND RECOMMENDATION Page 19

The Deutsche defendants move against plaintiffs' claim for breach of fiduciary duty on the ground that there was no fiduciary relationship between them. They argue that although the Amended Complaint alleges, "Defendants, as the Plaintiffs' attorneys, accountants, and advisors, were Plaintiffs' fiduciaries ..." ¶ 222, the Amended Complaint does not allege that Deutsche Bank itself acted as attorney, accountant or advisor to plaintiffs.

With respect to the Mulholland and Allen plaintiffs, the Deutsche defendants argue that the Confirmation explicitly states that the Deutsche defendants were not "acting as a fiduciary for or advisor to [Plaintiffs] in respect of this Transaction." Dubanevich Declaration, Exhibit 4.

Plaintiffs counter that the relationship between plaintiffs and the Deutsche defendants was not merely an arms-length commercial transaction because they have alleged that Parse and other employees of Deutsche Bank were instrumental in developing and designing the COBRA transaction for use as a tax strategy, Amended Complaint, ¶ ¶ 35, 38, 39, 65, 69, and advising plaintiffs on the consequences of the COBRA transaction. Id. at ¶¶ 65, 66, 68, 69, 224.

Under Oregon law, no fiduciary duties are implied unless the parties are in a "special relationship." Bennett v. Farmers Ins. Co. of Oregon, 332 Or. 138 (2001). A special relationship arises when

> the party who is owed the duty effectively has authorized the party who owes the duty to exercise independent judgment in the former party's behalf and in the former party's interests. In doing so, the party who is owed the

> duty is placed in a position of reliance upon the party
> who owes the duty; that is, because the former has given
> responsibility and control over the situation at issue to
> the latter, the former has a right to rely on the latter
> to achieve a desired outcome or resolution.

Conway v. Pacific University, 324 Or. 231, 240 (1996); see also

Bird v. Lewis & Clark College, 303 F.3d 1015, 1023 (9th Cir.

2002)(citing Conway). A special relationship is defined, not by its

name, but by the roles assumed by the parties. Bird, 303 F.3d at

1023, citing Strader v. Grange Mut. Ins. Co., 179 Or. App. 329

(2002).

The disclaimer in the Confirmation signed by the Allen and

Mulholland plaintiffs requires dismissal of the breach of fiduciary

duty claim asserted by them. See Steckman v. Hart Brewing, Inc.,

143 F.3d 1293, 1295-96 (9th Cir. 1998)(on a motion to dismiss, court

is not required to accept as true conclusory allegations which are

contradicted by documents referred to in the complaint).

Aside from the disclaimer, although paragraph 222 of the

Amended Complaint alleges that "defendants" were plaintiffs'

"attorneys, accountants, and advisors," the factual allegations of

the Amended Complaint do not bear out this conclusion. See Holden

v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992)(on a motion to

dismiss, court examines whether conclusory allegations follow from

the description of facts as alleged by the plaintiff). It is not

alleged that the Deutsche defendants were plaintiffs' attorneys or

accountants. This leaves only a possible role as "advisors." But

there are no allegations from which it could reasonably be inferred

that the Deutsche defendants exercised independent judgment on the

FINDINGS AND RECOMMENDATION Page 21

plaintiffs' behalf or took care of the plaintiffs' affairs in any way. Paragraph 65 of the Amended Complaint merely alleges that Mr. King was placed in contact with Brubaker of Deutsche Bank. Paragraph 66 alleges that "[b]ased on the representations and assurances of Brown [the King plaintiffs' "long-time accountant," according to ¶ 62 of the Amended Complaint], Brubaker [a Deutsche defendant] and Mayer [a lawyer at Jenkens & Gilchrest, according to ¶ 63 of the Amended Complaint], the King Plaintiffs agreed to engage in the COBRA strategy." The King plaintiffs' decision to engage in the COBRA strategy based on the alleged "representations and assurances" of their long-time accountant, a lawyer, and a Deutsche defendant does not establish that the Deutsche defendant had a special relationship with the King plaintiffs.

The allegations pertaining to the Mulholland and Allen plaintiffs are even less substantive. Plaintiffs allege that Deutsche defendant Judd "sold" the strategy to the Mulholland plaintiffs over the phone. Amended Complaint ¶ 69, and that "[b]ased on the representations and assurances of Mount [the Mulholland plaintiffs' long-time accountant, according to ¶ 67 of the Amended Complaint] and Judd, the Mulholland plaintiffs agreed to engage in the COBRA strategy." Amended Complaint, ¶ 70. The Mulholland plaintiffs allege that their decision to engage in the COBRA strategy was "based in large measure upon the Defendants' advice ... and the representations and recommendations of the Defendants during the initial COBRA Strategy presentation and thereafter." Amended Complaint ¶ 98. They allege further that the

"Defendants instructed, advised, and orchestrate the formation of [the COBRA strategy entities]." Amended Complaint ¶ 99.

The Allen plaintiffs allege that the COBRA strategy was presented to them by Nelson, Siegfried and Kerekes, none of whom is a Deutsche defendant, and that they agreed to engage in the COBRA strategy based on the "representations and assurances" of those three individuals. Amended Complaint, ¶¶ 72-74.

Paragraph 224 of the Amended Complaint enumerates separate breaches of fiduciary duty, but none is specific to the Deutsche defendants.

I conclude that the plaintiffs have not pleaded the existence of a special relationship with the Deutsche defendants and, insofar as the Mulholland and Allen plaintiffs are concerned, such a relationship is contradicted by the terms of the Confirmation. I recommend that all the plaintiffs' claims for breach of fiduciary duty against the Deutsche defendants be dismissed, with leave to replead.

### 3.   Fraud

The Deutsche defendants assert that the Mulholland and Allen plaintiffs cannot assert a claim for fraud because of their representations in the Confirmation that they were "not relying on any communication (written or oral) of [Deutsche Bank] including any affiliate or subsidiary thereof as investment advice or as a recommendation to enter into [the] Transaction." They assert further that none of the plaintiffs has alleged, with the particularity required by Rule 9(b) of the Federal Rules of Civil

FINDINGS AND RECOMMENDATION Page 23

Procedure, any material misrepresentation or omission by the Deutsche defendants.

The elements of a cause of action for fraud under Oregon law are 1) that the defendants falsely represented a material fact; 2) that the misrepresentation was knowingly made, or made with an insufficient basis for asserting its truth (scienter); 3) that the misrepresentation was made with the intent to induce plaintiff to act or refrain from acting; 4) that plaintiff justifiably relied on defendants' misrepresentation; and 5) that plaintiff suffered resultant damage. In re Harris Pine Mills, 44 F.3d 1431 (9th Cir. 1995); see also Riley Hill General Contractor v. Tandy Corp., 303 Or. 390, 405 (1987). The Confirmations directly contradict the Mulholland and Allen plaintiffs' allegations of reliance on statements or advice made by the Deutsche defendants. The court is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint. Steckman, 143 F.3d at 1295-96).

Rule 9(b) requires that fraud be alleged with particularity. Mere conclusory allegations of fraud are insufficient; although the complaint need not allege, in detail, all facts supporting each and every allegation, it must be specific. See United States ex rel. Lee v. Smithkline Beecham, Inc., 245 F.3d 1048, 1051-52 (9th Cir. 2001). Rule 9(b) requires the identification of the circumstances constituting fraud, Walling v. Beverly Enterprises, 476 F.2d 393, 397 (9th Cir. 1973); this means the plaintiff must state the time and specific content or nature of the fraudulent misrepresentations

or omissions, <u>Misc. Service Workers, Etc. v. Philco-Ford Corp.</u>, 661
F.2d 776, 782 (9th Cir. 1981), and the identities of the parties to
it. <u>Riley v. Brazeau</u>, 612 F. Supp. 674, 677 (D. Or. 1985). In a
case involving multiple defendants, plaintiff must specify the role
of each defendant in the fraud. <u>Id.</u>

Plaintiffs contend that they have alleged the Deutsche
defendants falsely represented that 1) the COBRA strategy was a
legitimate tax saving strategy, Amended Complaint ¶¶ 84, 129; 2)
the opinion letter was from an "independent" law firm, Amended
Complaint, ¶ 56, 61, 64, 69, and 73; 3) through the partnership
formed to engage in the COBRA strategy, it was possible to create
capital losses to offset expected capital gain and income, Amended
Complaint ¶ 77; and 4) the losses created by the COBRA strategy
were legitimate and legal, Amended Complaint ¶ 84, 129.

They contend that the Deutsche defendants also made the
following omissions of fact: 1) the significance of the IRS
notices, Amended Complaint ¶¶ 104, 109, 110, 112; 2) the existence
of the IRS Amnesty program, Amended Complaint ¶ 164; 3) the true
likelihood that the FX Contracts would pay out; 4) that Defendants
retained unlimited discretion to determine whether the FX Contracts
would pay out; 5) that the FX Contracts had no reasonable
possibility of a profit; and 6) that COBRA was a Jenkins strategy,
Amended Complaint ¶ 44.

However, none of these cited allegations contains the
requisite specificity of dates or identity of parties, as required
by Rule 9(b). Paragraphs 84, 129, 56, 61, 77, 84, 129, 104, 109,

FINDINGS AND RECOMMENDATION Page 25

110, 112, 164, and 44 refer to "the defendants," without specifying which defendant or defendants made the misrepresentations or omitted the material facts, see <u>Newman v. Comprehensive Care Corp.</u>, 794 F. Supp. 1513, 1527 (D. Or. 1992)[generic references to "defendants" fail to reach the level of particularity required by Rule 9(b)], and contain no indication as to the date or time the misrepresentation or omission occurred. Paragraph 64 does not identify the party making some of the misrepresentations; other misrepresentations are attributed to Brown and Mayer, who are not Deutsche defendants. Paragraph 69 refers to statements allegedly made by Judd, a Deutsche defendant, but does not identify the time the statement was made; other statements alleged in that paragraph are not attributed to anyone ("The Mulholland plaintiffs were also told ..."). Paragraph 73 refers to statements made by Kerekes, Nelson and Siegfried, who are not Deutsche defendants.

Plaintiffs have not pleaded their fraud claims with the specificity required by Rule 9(b), and the disclaimer of reliance in the Confirmations signed by the Mulholland and Allen plaintiffs specifically contradict one of the elements of fraud. I recommend that the fraud claims be dismissed with leave to replead.

### 4. Negligent Misrepresentation and Professional Malpractice

To state a claim for professional negligence, or malpractice, the plaintiff must allege and prove 1) a duty that runs from the defendant to the plaintiff; 2) breach of that duty; 3) resulting harm measurable in damages; and 4) causation. <u>Varner v. Eves</u>, 164 Or. App. 66, 73 (1999).

The tort of negligent misrepresentation requires that one party in a relationship owe a duty "beyond the common law duty to exercise reasonable care to prevent foreseeable harm to the other party." <u>Conway</u>, 324 Or. at 236. However, the law does not imply a tort duty "simply because one party to a business relationship begins to dominate and to control the other party's financial future;" rather, a duty is imposed "only when that relationship is of the type that, by its nature, allows one party to exercise judgment on the other party's behalf." <u>Bennett</u>, 332 Or. at 161-62.

As discussed above and in the Findings and Recommendation of March 9, 2005, plaintiffs have not pleaded the existence of a special relationship between the plaintiffs and the Deutsche defendants. They have not alleged that the Deutsche defendants exercised independent judgment with respect to the COBRA strategy, or that the plaintiffs relinquished control over the COBRA strategy to the Deutsche defendants.

I therefore recommend that the claims for professional malpractice and negligent misrepresentation be dismissed with leave to replead.

### 5. Civil Conspiracy

The Deutsche defendants move to dismiss the civil conspiracy claim on the ground that such a claim is not permitted under New York law. However, New York law is not applicable to this claim.

Under Oregon law, a civil conspiracy is a "combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by

FINDINGS AND RECOMMENDATION Page 27

unlawful means," so that to plead a claim for civil conspiracy, the plaintiff must allege facts showing 1) two or more persons; 2) an object to be accomplished; 3) a meeting of minds on the object or course of action; 4) one or more unlawful overt acts; and 5) damages as the proximate result thereof. <u>Bonds v. Landers</u>, 279 Or. 169, 174 (1977).[3]

Plaintiffs argue that they have properly pleaded a civil conspiracy to commit fraud. They rely on their allegations at ¶¶ 256-257 and 260 of the Amended Complaint:

> [T]he Defendants acted with full knowledge and awareness that the transaction was designed to give the false impression that a complex series of financial transactions were legitimate business transactions which had economic substance from an investment standpoint, when they in fact lacked these features ... [and they did so] all for the purposes of obtaining professional fees from consumers, including the Plaintiffs.

Plaintiffs also rely on their allegation that the defendants "conspired to devise and promote the ... Strategy" and "[t]he receipt of fees ... was the primary ... motive in the development and execution of the transaction." Amended Complaint ¶ 127.

I conclude that these allegations are insufficient. As the court held previously in the March 9, 2005 Findings and

_____

[3] Oregon law does not conflict with federal common law on civil conspiracy. See, e.g., <u>Gilbrook v. City of Westminster</u>, 177 F.3d 839, 856 (9th Cir. 1999)(civil conspiracy is a combination of two or more persons who, by some concerted action, intend to accomplish some unlawful objective for the purpose of harming another, and which results in damage).

Recommendation, plaintiffs' general allegations against "defendants," as discussed above, do not suffice to plead the necessary element of intent, or a "meeting of minds on the object or course of action." See <u>Lawyer v. Lawvor</u>, 86 Or. App. 721, 726 (1987)(plaintiffs who "merely plead in a vague and conclusory manner that the named persons 'have conspired with and among each other' to achieve the allegedly fraudulent objectives" fail to plead a claim for civil conspiracy) and <u>Yanney v. Koehler</u>, 147 Or. App. 269 (1997)(plaintiffs failed to plead the meeting of the minds element because the allegations were vague and conclusory). I recommend, therefore, that the civil conspiracy claim be dismissed with leave to replead.

///

### 6. Declaratory Judgment Claim

The Deutsche defendants move for dismissal of the declaratory judgment claim because plaintiffs have pleaded insufficient facts in support of their underlying claims. This is the ground upon which the court dismissed the declaratory judgment claim asserted against the Lincoln defendants in the March 9, 2005 Findings and Recommendation. I agree with the Deutsche defendants that dismissal of this claim is warranted, for the reasons discussed in the March 9, 2005 Findings and Recommendation.

### C. Damages

#### 1. Interest

Defendants assert that plaintiffs are not entitled to recover any interest allegedly paid to the IRS or other taxing authorities.

In the March 5, 2005 Findings and Recommendation, the court held that plaintiffs' interest recovery should be limited to the difference between the interest earned on the tax savings and the interest paid to the IRS for possessing the money unlawfully. Defendants assert that New York law applies to plaintiffs' claims against the Deutsche defendants, and that under New York law, no interest at all is recoverable as compensatory damages, because plaintiffs had the use of the government's money from the time they filed their tax returns until they paid any tax deficiencies to the IRS. See <u>Alpert v. Shea Gould Climenko & Casey</u>, 559 N.Y.S.2d 312, 315 (N.Y. App. Div. 1990).

I decline to apply the contractual choice of law provision to the tort claims asserted in this case, and conclude that the court's earlier ruling, allowing the plaintiffs to assert a claim for the "interest differential" should stand.

### 2. Penalties

Defendants assert that plaintiffs are not entitled to recover from the Deutsche defendants any penalties paid to the IRS because they have not alleged any statements or acts by the Deutsche defendants that prevented plaintiffs from taking advantage of the IRS amnesty program, or any facts giving rise to an inference that the Deutsche defendants had any duty to advise plaintiffs to take advantage of the amnesty program. I agree.

I recommend that plaintiffs' claim for recovery of penalties paid to the IRS be dismissed with leave to plead facts showing that the Deutsche defendants prevented the plaintiffs from taking

FINDINGS AND RECOMMENDATION Page 30

advantage of the IRS amnesty program, or that they had a duty to advise plaintiffs to take advantage of the IRS amnesty program.

### Conclusion

I recommend that the Deutsche defendants' motion to dismiss (doc. # 124) be GRANTED in part and DENIED in part. I recommend that the motion to dismiss Claims One, Two and Three as barred under the PSLRA be granted. If this recommendation is rejected, I recommend that 1) the issue of whether plaintiffs have pleaded RICO standing be reconsidered; 2) the motion to dismiss Claim One for failure to allege the continuity requirement be denied; 3) Claim Two be dismissed with leave to replead; and 4) Claim Three be dismissed with prejudice. I recommend further that the claim for unjust enrichment be dismissed, with leave to replead; that the claim for breach of fiduciary duty be dismissed with leave to replead; that the fraud claim be dismissed, with leave to replead; that the negligent misrepresentation and professional malpractice claims be dismissed, with leave to replead; that the civil conspiracy claim be dismissed with leave to replead; that the declaratory judgment claim be dismissed, with leave to replead; that the motion to dismiss the claim for interest be denied; and that the motion to dismiss the claim for penalties be granted with leave to replead.

### Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due September 27, 2005. If no objections are filed, review of the

Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due October 11, 2005, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this <u>12th</u> day of <u>September</u>, 2005.

<u>/s/  Dennis James Hubel</u>

Dennis James Hubel
United States Magistrate Judge

FINDINGS AND RECOMMENDATION Page 32